SAMUEL M. REYNOLDS and EDWARD REYNOLDS, trading as S. M. REYNOLDS & Co. *vs.* WILLIAM D. HOWELL, garnishee of John Appleton.

QUESTIONS RESERVED FROM THE SUPERIOR COURT OF NEW CASTLE CO.

**Attachment. Practice.**—The death of the garnishee under a *fi. fa.* attachment, after service of process but before answer or plea entered, dissolves the attachment and the property attached passes to the personal representatives of the garnishee as an asset for administration.

**Attachment. Lien.**—In foreign attachment the seizure of the officer holds the property, and may be said to place the same in *custodia legis*, yet such seizure does not constitute a lien such as is made by execution process founded on a judgment, which is absolute—dependent on no contingency or condition.

**Same.**—The lien by attachment process is wholly dependent upon the subsequent

recovery of a judgment on an attachment process in accordance with the provisions of the statute, and upon execution sued out on such judgment the same may be levied upon property so attached, and the lien of the execution goes back and holds the property as of the date of the attachment.

**Same.**—The attachment holds the property subject to be taken in execution upon a judgment subsequently recovered in an attachment proceeding and not till then becomes a fixed and permanent lien. If no judgment can be obtained, by reason of any matter which defeats or prevents the legal recovery, then such conditional lien is at once dissolved. No fixed lien can be had until judgment and execution.

QUESTIONS RESERVED ON CASE STATED.—The facts agreed upon were substantially as follows: On Nov. 20, 1891, the plaintiffs recovered judgment in the Superior Court of New Castle County against John Appleton for the real debt of $373.93, with interest from Sept. 1, 1891. On July 12, 1892, an attachment *fi. fa.* was issued and two days later the defendant was summoned as a garnishee, he being a tenant of Appleton for one year commencing March 25, 1892, the rent being one-half the grain produced on the farm payable in kind. Appleton died July 18, 1892, and on Aug. 15, following, letters testamentary were granted on his estate. At the time of service of the attachment the defendant had a crop of corn growing which was sold and delivered prior to Nov. 30, 1892, on which day the defendant entered a plea of *nulla bona.* The value of the corn rent for the year was $223.34. The defendant also, as outgoing tenant, sold the crop of wheat during the month of October, 1892, and the value of the wheat rent for the year was $314.79. The plaintiffs claimed that they were entitled to receive from the garnishee the whole of the proceeds payable as rent, amounting to $517.13; and the defendant claimed that the attachment was dissolved by the death of Appleton and that the plaintiffs were not entitled to receive any part of the rent.

After the case stated was filed, an order was entered reserving the questions of law therein contained to be heard before all the

judges.    Accordingly, Nov. 1, 1894, the case was heard before
WOLCOTT, Ch., LORE, C. J., and GRUBB, CULLEN and MAR-
VEL, JJ.

*J. Frank Biggs*, for plaintiffs.    The question to be decided in
this case is, did the death of John Appleton dissolve the *fi. fa.* at-
tachment.    The plaintiffs' right to collect their judgment debt by
a *fi. fa.* attachment is a statutory remedy; Rev. Code p. 840, Sec.
45.    The proceedings upon a *fi. fa.* attachment are like those in
cases upon a foreign attachment and a domestic attachment; Rev.
Code p. 781, Ch. 104; *id.* 787, § 6.    The plaintiffs secured a
lien on the property attached previous to the death of the said
John Appleton, because a *fi. fa.* attachment takes effect from the
time of its service; Drake, Attachments §§ 221, 224, 453.
The plaintiffs are entitled to a judgment against William D. How-
ell, garnishee, for the sum of $537.13; because at the time the
said William D. Howell entered the plea of *nulla bona,* he had
in his possession the proceeds of John Appleton's share of corn
rent amounting to the sum of $222,34, and John Appleton's share
of the growing wheat crop which was afterward ascertained to be
worth $314.97; Rev. Code 783 § 7.    The wheat crop, in this
State, is considered as rent for the year in which it is sowed;
*Thompson vs. McClary et al.,* 1 Harring. 520; *Templeman vs. Biddle,*
*id.* 522; *Kent Co. Mutual Insurance Co. vs. Burrows,* 6 Houst.
355; *Clark vs. Banks et al., id.* 584.

    " The moment a party is dead, the rights of his creditors are
fixed.    An execution once begun should proceed.    I understand
by this that where chattels or other property are seized in execu-
tion, you proceed to complete the execution at any time after, and
the death of neither plaintiff nor defendant will stop the execution;
*Cooper et ux. vs. May,* 1 Harring. 18. Goods may be levied upon in
the hands of an administrator by force of an execution issued after
the intestate's death, but bearing teste before; *Graham vs. Wilson,*
5 Harring. 435    If the plaintiff can issue a *fi. fa.* on a judgment
after the death of the defendant, provided the teste day of the

writ is prior to the death of the defendant, and levy upon the goods in the hands of an administrator, then, *a fortiori*, should the plaintiff be allowed to continue his *fi. fa.* attachment lien on goods which never were in the actual possession of the defendant, and the lien secured previous to the death of the defendant in the judgment. It has been held in many cases that an attachment does not abate by the death of the defendant; Drake, Attachments § 422; Wade, Attachments § 291; *Fitch vs. Ross*, 4 S. & R. 557; *Boyd vs. Roberts*, 10 Heisk. (Tenn.) 474; *Perkins vs. Nowell*, 6 Humph (Tenn.) 151; *Kennedy vs. Ragnet*, 1 Bay (S. C.) 484; *Moore vs. Thayer*, 10 Barb. 258; *White vs. Heavner*, 7 W. Va. 324; *Lord vs. Allen*, 34 Ia. 281; *Holman vs. Fisher*, 49 Miss. 472; and that bankruptcy of a defendant does not dissolve an attachment; Wade, Attachments § 291; Drake, Attachments § 425; *Downer vs. Brackett*, 5 L. Rep. 392 s. c. 21 Vt. 599; *Haughton vs. Eustis*, 5 L. Rep. 505; *Franklin Bank vs. Batchelder*, 23 Me. 60; *Kittredge vs. Warren*, 14 N. H. 509; *Davenport vs. Tilton*, 10 Metc. (Mass.) 320; *Vreeland vs. Brown*, 1 Zabr. 214; *Wells vs. Brander*, 10 S. & M. (Miss.) 348; *Hill vs. Harding*, 93 Ill. 77.

If the plaintiffs had issued a *fi. fa.* and levied against John Appleton in his lifetime, their lien would have continued upon the goods in the hands of his executors. Why, then, should the *fi. fa.* attachment be dissolved? A lien on goods by a *fi. fa.* attachment is not different from a lien on goods by a *fi. fa.* The plaintiffs obtained by the garnishment, a legal lien on this rent in the hands of the tenant during the lifetime of John Appleton. The lien is not waived nor the attachment suspended because the answer has not been made. The garnishee may answer after many terms if the time of answering is continued. The settlement of the estate of John Appleton will not, in any manner be disturbed by continuing the lien of this attachment. And the preference of these plaintiffs over other creditors would be only such as the lien gives. There is not any provision of the statute to the effect that an attach-

ment will be dissolved by the death of the defendant. The law favors the diligent and the lien should not be divested by death.

*Harry Emmons,* for the defendant. The remedy by attachment is essentially a creature of the statute, and, as the proceeding involves the involuntary dispossession of the owner and antagonizes the common law idea of proprietary right, the statute upon which it is founded is strictly construed; Wade, Attachments, § 23; 1 Am. & Eng. Encyc. of Law, 894. Garnishment proceedings are also regulated entirely by statute; Wade, Attachments, §§ 325, 333; 8 Am. & Eng. Encyc. of Law, 1105; *Tate vs. Moorehead,* 65 N. C. 681; *Parker vs. Parker,* 2 Hill (S. C.) 35; *Parker vs. Farr,* 2 Browne (Pa.) 331; *May vs. Baker,* 15 Ill. 90; *Bliss vs. Smith,* 78 id. 359; *Bigelow vs. Andress,* 31 id. 322; *Wolf vs. Toppan,* 5 Dana 361; *Iron Cliffs Co. vs. Lahais,* 52 Mich. 394; *Weimeister vs. Manville,* 44 id. 408–411; *Penna Steel Co. vs. N. J. S. R. R. Co.,* 4 Houst. 578.

Our statutes make no provision for continuing the process of garnishment where the defendant in the execution dies after an execution attachment has issued, but before any answer or plea is entered by the garnishee. The attachment in such a case is dissolved.

An execution attachment under our laws partakes of the nature of a foreign attachment and is proceeded upon in the same way; New Code p. 840.

The general provisions of law relating to the survivancy of actions do not apply to attachment proceedings, (New Code, § 18, p. 785) as under our attachment laws provision is expressly made for a continuance of the action in case of death of the plaintiff, but no such provision is made in the case of the defendant's death

Our statute provides for the payment of the debts of a decedent in a certain order (New Code 676), and without some express provision made by the Legislature, this order cannot be disturbed.

Garnishment proceedings cannot be revived against an administrator or executor of a garnishee who dies before answer and

while proceedings are pending; *White vs. Ledyard, admr.*, 48 Mich. 264; 47 Ill. 235; 7 Mo. App. 300; *Robinson's Extr. vs. Harris*, 5 Harring. 254.

The proposition that the death of the defendant in a judgment dissolves the attachment or garnishment proceedings thereon, is sustained by the great weight of general authority; Drake, Attachments, §§ 422, 459; Wade, Attachments, § 291; 1 Am. & En. Encyc. of Law 933; 5 *id.* 134–135; *Davenport vs. Tilton*, 10 Metc. (Mass ) 320; *Whitmarsh vs. Richmond*, 65 Mass. 463; *Loring vs. Folger*, 73 *id.* 505; *Vaughn vs. Sturtevant*, 7 R. I; 372; *Upham vs. Dodge*, 11 *id.* 621; *Dwyer vs. Bendict*, 12 id. 459; *Fitch vs. Ross*, 4 S. & R. 557; *Farmer's Bank vs. Little*, 8 W. & S. 207; *Pancost vs. Washington*, 5 Cra. C. C. 507; *Collins vs. Duffy*, 7 La. Ann. 39; *Green vs. Shaver*, 3 Hump. 139; *Perkins vs. Norwell*, 6 *id.* 151; *Sweringer vs. Eberius*, 7 Mo. 421; *Harrison vs. Renfrow*, 13 *id.* 446; *Kensick vs. Huff*, 71 *id.* 570; *Loubat vs. Kipp*, 9 Fla. 60; *Davis vs. Shapley*, 19 Ill. 386; *Myers vs. Mott*, 29 Cal. 359–365; *Hensley vs. Morgan*, 47 id. 622; *Thatcher vs. Bancroft*, 15 Abb. Pr. 243; *White vs. Heavner*, 7 W. Va. 324; *Lord vs. Allem*, 34 Ia. 281; *Holman vs. Fisher*, 49 Miss. 472; *McEachin vs. Reid*, 40 Ala. 410; *Rice vs. Clements*, 57 *id.* 191; *Seals vs. Holloway's admr.* 77 *id.* 344; *Farnsworth vs. Page*, 17 N. H. 334; *Bowman vs. Stark*, 6 *id.* 459; *Kittredge vs. Warren*, 14 *id.* 509; *Wait vs. Thompson*, 43 *id.* 161; *Vreeland vs. Bruen*, 1 Zabr. 222; *Peck vs. Jennes*, 7 How. 612; *Boyd vs. Roberts*, 10 Heisk, 474; *Kennedy vs. Raguet*, 1 Bay (S. C.) 484; *Croker vs. Radcliff*, 3 Brev. (S. C.) 23; *Lyon's Admr. vs. Houston's Ex'r.* 2 Harring. 349.

CULLEN, J., delivered the opinion of the Court.

The above case comes up for a hearing on a case stated filed in the Superior Court of the State of Delaware in and for New Castle County, and the said Court, having considered that the questions of law therein contained ought to be decided before all the judges, did, upon the application of the parties, order and direct the same should be heard in the Court of Errors and Ap-

peals. From the case stated it appears : That there was a judgment recovered in the Superior Court of the State of Delaware in and for New Castle County, on the 21st of November, 1891, at the suit of Samuel M. Reynolds and Edward Reynolds, trading as S. M. Reynolds & Co., against John Appleton, for the sum of $373.93, with interest from September, 1891, said judgment being No. 426, to September term, 1891. That on 12th day of July, 1892, the plaintiffs in said judgment sued out a *fi. fa.* attachment against said defendant, returnable to the September term, 1892, and that on the 14th day of July, 1892, the said William D. Howell, the defendant in case stated, was duly summoned to answer as garnishee of John Appleton, defendant. That William D. Howell, garnishnee, was a tenant of John Appleton, defendant, residing on a farm situate in New Castle County, for the year commencing March 25th, 1892, and ending March 25th, 1893, the rent reserved being one-half part of grain produce, payable in kind, which consisted of corn and wheat. That John Appleton died on the 18th of July, 1892, and letters testamentary upon his estate were duly granted by the Registry of Wills in and for New Castle County to Henry H. Appleton and John H. Hoffecker on the 15th of August, 1892. That on the 30th of November, 1892, at the November term, 1892, and after the death of John Appleton, William D. Howell, garnishee, entered a plea of *nulla bona* to the attachment, on the records in court. That at the time of the attachment William D. Howell, as tenant on said farm, had a crop of corn which was sold and delivered prior to the 30th of November, 1892, and the proceeds thereof amounted to $222.34 ; that the crop of wheat also was sold by the garnishee some time prior to March 25th, 1893, the proceeds of sale amounted to $314.79 ; and that the proceeds of corn and wheat, amounting to $537.13, are now in the hands of the garnishee, all of which came to his hands after the death of John Appleton.

The question submitted for our decision upon the foregoing facts, as set forth in the case stated, is as to the effect of the death of John Appleton upon the attachment, he having died before

answer made or plea entered. Did the death occuring before plea or answer dissolve the attachment, or did the service of the attachment in the lifetime of John Appleton, on the garnishee, create or cause a lien similar to that of an execution, which is not affected by the decease of the defendant? It is contended on the part of S. M. Reynolds & Co., the attaching creditors, that upon the service of attachment upon William D. Howell, the goods, chattels, money, etc., in his hands at the time of service of attachment and up to the time of answer or plea,belonging to John Appleton, were alike bound as if an execution had been levied thereon, and the lien thus created did not abate by reason of the death of John Appleton, and that the same could be prosecuted to judgment after his death, and the attachment is in no way dissolved; while, on the contrary, it is contended by the garnishee that by reason of the death of John Appleton before answer or determination of a trial on the plea of *nulla bona,* the attachment was dissolved and the proceeds of the sale of the goods and chattels of John Appleton remaining in the hands of the garnishee belonged to the representative of John Appleton, to be paid over and distributed as assets belonging to his estate, under the provisions of the Act of Assembly.

The proceeding by garnishment, in cases of this kind, originated under the Custom of London, and it is expressly provided by our statute as follows: "The plaintiff in any judgment in a court of record or any person for him lawfully authorized, may cause an attachment as well as any other execution to be issued thereon containing an order for the summoning of garnishees to be proceeded upon and returned as in cases of foreign attachment." Rev. Code (as amended) p. 840, Sec. 45. The law, therefore, as applicable to the decision in this case, may be considered the same as the proceedings governing a case of foreign attachment under the statutes of our State.

The remedy by attachment arises entirely under the statute of our State, and hence all proceedings in relation thereto must conform to, and be consistent with, the provisions of such statute. It furnishes a summary remedy, while in most, if not all, the States

of this country, the proceeding by attachment is governed and controlled by statutes which differ more or less in very many material respects; hence we find a great variety of conflicts of decisions upon the subject of attachment proceedings, by reason of the different provisions in their statutes, apart from some general provisions governing the law of attachment, which prevail generally, alike in this country and in England. The object in foreign attachment is to compel an appearance, and when that object is obtained, the property attached is discharged; and though the seizure of the officer holds the property, and may be said to place the same in *custodia legis*, yet such seizure does not constitute a lien such as is made by execution process founded on a judgment, which is absolute,—dependent on no contingency or condition. The lien by attachment process is wholly dependent upon the subsequent recovery of a judgment on the attachment process in accordance with the provisions of the statute, and upon execution sued out on such judgment the same may be levied upon property so attached, and the lien of the execution goes back, and holds the property as of the date of the attachment. In other words, the attachment holds the property subject to be taken in execution upon a judgment subsequently recovered in the attachment proceeding, and not till then becomes a fixed and permanent lien. If no judgment can be obtained, by reason of any matter which defeats or prevents the legal recovery, then such conditional lien is at once dissolved, but no fixed lien can be had until judgment and execution. If the debtor of the defendant be summoned as garnishee, he is restrained from paying over the debt or property to the defendant in the attachment. It is a notice to him to retain the property in his hands until the determination of the legal issue of the proceedings on the attachment process; hence the garnishee, being free from fraud and neglect, is not liable for interest, nor in such case should the garnishee pay over to the plaintiff the property attached until compelled by process of execution. The attachment proceedings must be perfected by judgment; otherwise the lien existing by attachment of property or summoning garnishees is dissolved. The proceedings under the

attachment laws of Pennsylvania, though in many respects differing from the laws in this State, yet in others, in a great measure, conform to ours. There it is laid down, *Parker vs. Farr*, 2 Browne, 332, cited in Sergeant on Attachments, as given in text by Mr. Sergeant: "A foreign attachment gives the attaching creditor a lien on a debt due by the garnishee to the defendant, so far as to restrain the garnishee from paying it over to his creditors, but no further. It creates no lien on the real or personal estate of the garnishee. Therefore, where the garnishee dies intestate before trial or judgment on the *sci. fa.*, and without leaving assets to pay all his debts, the plaintiff in the foreign attachment has no preference over the other creditors, if the subject of the attachment is a debt due by the garnishee to the defendant in the attachment." Had the garnishee answered in this case, and judgment on answer been rendered, or had trial been had on plea of *nulla bona*, and judgment recovered, then a different case would have been presented for our consideration. The attaching creditor declined to take answer and elected that the garnishee should plead, and a plea of *nulla bona* was entered, and at that time the defendant was dead. There must be a party defendant when answer is made, else how could the garnishee answer? To whom—the defendant? There is none. He is dead. The process of attachment, cannot survive save by express statute, and we have none; hence no judgment could be rendered on the answer of the garnishee by making executors parties. No legal judgment on these attachment proceedings could, under the circumstances, be rendered, even if answer had been made. The case is now pending on a plea of *nulla bona*, and the defendant is dead. There is no party in court. The executors and administrators are not liable to enter special bail; and, again, no writ of foreign attachment can issue against executors or administrators. Hence we cannot see how any legal judgment could be recovered by the plaintiffs on a trial on this plea. Under the provisions of our foreign attachment laws, the defendant may put in bail at any time before the judgment, but in no case can judgment be had until the second term after attachment issued;

whereas it appears from the case stated that the defendant in attachment died six days after attachment issued, and by reason thereof the right or privilege existing for and in behalf of a defendant could not be exercised. Does not this fact, standing alone, present an impassable barrier, over which the attaching creditors could not pass to obtain a legal judgment? Therefore, at the decease of John Appleton there ceased to be any party defendant in court; and, if so, how could judgment be recovered, and execution issued thereon, to make fixed and permanent the lien obtained by said attachment process?

The principles involved in this case, as to the answer of a garnishee, wherein the defendant dies before answer, appear to have been decided by our courts, in *Wootten vs. Harris,* 5 Harring. 254, Two writs of *fi. fa.* attachment were issued (one to April term, 1849 ; and the other to October term, 1849) at the suit of *Edward Wootten vs. Nathaniel P. Harris ;* and the attachments were laid in the hands of David R. Smith on November 27, 1848, and April 10, 1849. On April 20, 1849, a rule was laid on Smith to answer or plead, but before answer he died. An *alias fi. fa.* attachment was issued to April term, 1850, and laid in the hands of his executors on the 1st day of November, 1849. "Nathaniel P. Harris obtained a judgment against David R. Smith, and issued execution October 26, 1849. This judgment was assigned to Minos P. Conoway April 3, 1850. The plaintiff, Edward Wootten, now elected to take the answer of Smith's executor, and had a rule to show cause why he should not be compelled to answer. Conoway, as assignee of Harris, moved to discharge the executor of Smith from the attachment," etc. In the argument of this case, the question as argued by counsel, was whether the attachment lien on the funds in the hands of Smith, or of his executor, had a preference to the execution of Conoway ; and it was contended by counsel for attaching creditors that the lien of the attaching creditors, being made in the lifetime of the garnishee, was in no way different from a lien upon goods by execution, and that the subsequent execution took the goods, or the same went into the hands of the

executor subject to the attachment lien; in other words, that the .
lien by attachment and the execution were of the same and equal
validity. Counsel for execution creditor contended : That the case
had been argued as if the attachment creditor had a judgment lien
against defendant, whereas the garnishee was only summoned and
had never answered ; that, inasmuch as no answer of garnishee
was ever taken, no lien as against him was ever acquired ; that the
attachment process was dissolved by defendant's death. An execu-
tor or administrator cannot be summoned as garnishee (*Ficthett vs.
Dolbey*, 3 Harring. (Del.) 267) on the ground that it disturbs the
course of administration. That the debt of Conoway was then a
judgment and execution against Smith's executor, levied on Smith's
goods; yet the object is, and the effect would be, to make this at-
tachment, not yet having gone to judgment, have preference to this
execution. That if the executor, by leave of the Court, should
come in and answer to the attachment, how could the judgment on
that answer protect the estate against the judgment of Conoway ?
That the Sheriff who had the execution in hand could not be re-
lieved from collecting the money on the execution. That it would
be the same on a plea of *nulla bona* and trial. The facts in this
case, though different from the one before us, yet involve the same
principle. I have cited thus fully the arguments of counsel, inas-
much as the case contains no opinion by the court, only that the
rule was discharged, thereby virtually deciding the question of law
submitted in this case, viz., that the attachment process was dis-
solved by reason of the fact that no judgment had been recovered
on the attachment in the lifetime of the defendant, hence the lien
obtained by attachment was gone.

We find further from the case stated, that at the time of ser-
vice of the attachment on the garnishee there was no property,
goods, chattels, money, etc., in the hands of the garnishee, and the
wheat and corn growing on the lands of John Appleton came to
the hands of the garnishee long after the decease of the defendant,
and could not be the subject of attachment, so as to create a lien,
since the same was not in existence until after death of defendant,

and hence passed, as assets of the estate of the defendant, to his executors, to be administered according to law. True it is, the garnishee, at the time of answer, should, in his answer, cover all the goods, chattels, money and effects, etc., which were in his hands at the time of the service of the attachment, or at any time since up to date of answer. But in this case the defendant in the attachment died a few days after attachment issued. The garnishee owed the defendant nothing in his lifetime, and his indebtedness accrued when crops matured, and by law was due and payable to the executors of defendant's estate, and was never the subject of attachment. To hold otherwise would make the property of a deceased person the subject of attachment, which is a clear violation of law. No lien can exist upon that which is in expectancy, but the same must be *in esse* at the time ; and the wheat and corn, in this case, never existed until after defendant died. Hence the garnishee could not owe the proceeds of wheat and corn to the defendant at time of attachment, or at any other time since, up to date. The defendant was dead. There was no party defendant in court and the attachment was dissolved for want of parties.

We are, therefore, of the opinion, after a careful review of the question of law submitted for our decision in the case stated, that the attachment issued by Samuel M. Reynolds and Edward Reynolds, trading as S. M. Reynolds & Co., under which William D. Howell was summoned as a garnishee of John Appleton, was dissolved by the death of John Appleton before answer of the garnishee, or trial on the issue of the plea of *nulla bona.*

November 2, 1894, the following certificate of the opinion of the Court was made :

It is the opinion of the Court upon the facts set forth in the case stated that the attachment issued by Samuel M. Reynolds and Edward Reynolds, trading as S. M. Reynolds & Co., under which the said William D. Howell was summoned as garnishee of John Appleton was, by the death of John Appleton, before answer of the said garnishee or trial on the issue of the plea of *nulla bona,*

dissolved, and the Court do therefore order that this opinion be certified to the Superior Court in and for New Castle County.